IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARYKAY MUTTERS-EDELMAN,

    Plaintiff,

vs.                                                         Case No: 1:23-cv-01197-STA-jay

APPROXIMATELY 132 ACRES OF LAND
(PARCEL ID 141 02300 000) LOCATED ON
CHEWALLA ROAD, RAMER
(MCNAIRY COUNTY), TENNESSEE,

    Defendant.

---

REPORT AND RECOMMENDATION

---

    Intervenors Kathie and Peggy Berryman filed a motion to dismiss Plaintiff Marykay Mutters-Edelman's lawsuit and for sanctions. (Docket Entry [D.E.] 20.) Plaintiff has filed a response in opposition and the Intervenors have filed a reply. (D.E. 23-24.) The Intervenors have also filed a separate motion for sanctions to which Plaintiff has responded. (D.E. 25-26.) This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05. It is RECOMMENDED that the Intervenors' motion to dismiss be GRANTED, and that the Court impose SANCTIONS against Plaintiff.

1

I.

This is Plaintiff's third action arising from her allegations that she is one of the rightful heirs to 132 acres of farmland and a homestead located on Chewalla Road ("the Farm") in McNairy County, Tennessee.

A.

Plaintiff is the niece of Rubye Blackwood, who was married to Brooks Derryberry. *In re Est. of Baker*, No. W202000460COAR3CV, 2021 WL 1265166, at *1 (Tenn. Ct. App. Apr. 6, 2021). In 1967, Mr. Derryberry executed a deed ("the 1967 deed") which "create[d] a tenancy by the entireties in and to the entire interest" in the Farm with Ms. Blackwood. *Id.* Ms. Blackwood died without having any children and the widowed Mr. Derryberry married Hattie Faye Baker. *Id.* Mr. Derryberry later died without having any children and intestate[1]. *Id.* Ms. Baker was Mr. Derryberry's sole heir and upon her death her property, as directed by her will, was devised to her three children, Peggy Jo Berryman, Kathy Ann Berryman, and Timothy Baker ("the Baker heirs"). *Id.* The executor of Ms. Baker's estate recorded an executor's deed granting the Farm to the Baker heirs, who subsequently quit claimed their interests in the Farm to other members of their family. *Id.*

B.

Plaintiff brought her first action in the Chancery Court of McNairy County, Tennessee in 2019, against the Baker Estate and the Baker heirs. *Id.* In that lawsuit, she claimed to be the heir to the Derryberry estate pursuant to the 1967 deed and the alleged 1963 will that was never probated in which she claimed that Mr. Derryberry devised to Plaintiff's aunt Ms. Blackwood all

---

[1] Plaintiff disputes that Mr. Derryberry died intestate and contends that Ms. Baker hid the 1963 will. (D.E. 1, p. 6.)

2

his personal and real property, including the Farm. *Id*. Plaintiff sought to have the executor's deed and the Baker heirs' quit claim deeds set aside, and to have the Berrymans ejected from the Farm. *Id*. The Chancery Court granted the Baker Estate's motion to dismiss Plaintiff's lawsuit. *Id.*

The Tennessee Court of Appeals affirmed the Chancery Court's dismissal. The appellate court held that the trial court was correct in finding that the 1967 deed created a tenancy by the entirety of the Farm between Mr. Derryberry and Ms. Blackwood, and that after Ms. Blackwood died Mr. Derryberry became the surviving tenant by the entirety thereby owning the Farm in fee simple. *Baker*, 2021 WL 1265166, *3-4. When Mr. Derryberry died intestate and heirless, his fee simple interest in the Farm passed to his spouse, Ms. Baker. *Id*. at *1-2. The Court of Appeals also rejected Plaintiff's arguments that the Berryman's had engaged in fraud, finding that her allegations against the Berrymans were irrelevant and non-determinative based upon the 1967 deed. *Id.* at *4-5.

C.

A few months after the Tennessee Court of Appeals affirmed the dismissal of Plaintiff's state court action, she brought suit in this Court against Peggy Jo Berryman, Kathy Ann Berryman, and Timothy Baker ("the Baker heirs"), as well as their attorney Terry Abernathy, and the McNairy County Chancery Court Clerk and Master Kimberly Boals. *See Mutters-Edelman v. Abernathy, et al.*, No. 1:20-cv-02455-STA-cgc (W.D. Tenn. filed June 25, 2020). In that action, Plaintiff alleged that the Baker heirs, with the assistance of their attorney and the clerk and master, conspired to unlawfully remove the 1967 deed from the McNairy County Courthouse and fraudulently replace it with the aforementioned executor's deed. (*See generally id*, D.E. 1.) Plaintiff alleged that she was denied due process because she had no notice of legal proceedings regarding the property's

disposition, and that the clerk and master would not permit her to record the unprobated 1963 will thereby depriving her of her First Amendment rights. (*Id.*)

This Court dismissed Plaintiff's lawsuit under the doctrine of collateral estoppel. (*Id.* at D.E. 61, p. 5.) The Court stated:

> Here, Plaintiff attempts to re-argue matters that have been determined by the Tennessee Court of Appeals. … Plaintiff had "a full and fair opportunity" both in the McNairy Chancery Court and in the Tennessee Court of Appeals "to contest the issue now sought to be precluded"…
>
> This Court finds that Plaintiff is collaterally estopped from re-litigating the issue of the ownership of Mr. Derryberry's farm because that issue has been determined by the Tennessee Court of Appeals.

(*Id*. at pp. 6-7.)

D.

Plaintiff brought the present lawsuit requesting that the Court determine her ownership rights regarding the Farm. (D.E. 1, pp. 2, 10.) Plaintiff styled her Complaint as an *in rem* action and did not name any individual defendants. (*See id*.) In support of her Complaint and requested relief, Plaintiff attaches as exhibits, and relies upon, the 1963 unprobated will and the 1967 deed. (*Id*., Ex. 2, 5.) Plaintiff makes the same general allegations as were found in her prior lawsuits – that the 1963 unprobated will devised the Farm to Ms. Blackwood's heirs, the 1967 deed gave Mr. Derryberry a fee simple interest in the Farm upon Ms. Blackwood's death, and that Plaintiff, as an heir of Ms. Blackwood, should have an interest in the Farm because the unprobated 1963 will bequeathed Mr. Derryberry's fee simple interest in the Farm to Blackwood heirs. (*See* D.E. 1, pp. 2-4, ¶¶ 1-2.) Plaintiff had summonses issued for and served upon Peggy Berryman and Kathy Berryman. (D.E. 12-13.) Peggy and Kathy Berryman were granted leave to intervene over Plaintiff's objection. (D.E. 14-15, 16-18.)

II.

The Intervenors have moved the Court to dismiss Plaintiff's present action with prejudice. (D.E. 20, 25.) They argue that dismissal is appropriate because ownership of the Farm has already been determined and Plaintiff's current action is collaterally estopped. Plaintiff contends in opposition that collateral estoppel is inapplicable because not all issues raised in Plaintiff's Complaint have been previously decided by either this Court or the McNairy County Chancery Court, namely that the Intervenors have not been determined to be the owners of the Farm nor have findings been made concerning the unprobated 1963 will. (D.E. 23, 26.)

The Intervenors seek a sanction against Plaintiff in the form of a permanent injunction prohibiting Plaintiff from attempting to litigate this issue again in this Court. (D.E. 20.) The Intervenors also filed a separate motion seeking sanctions, reiterating their request for a permanent injunction enjoining Plaintiff from filing another action in this Court seeking the same relief, awarding the Intervenors the fees and expenses they have incurred because of this litigation, and instructing the Clerk of the Court not to accept any future filings in which Plaintiff seeks the same relief. (D.E. 25, 25-1.) Plaintiff opposes the imposition of sanctions arguing that the issues presented in her present action are not estopped and that Intervenors have not set out with particularity the ground upon which sanctions should be imposed. (D.E. 26.)

It is RECOMMENDED that the Court GRANT the Intervenors' motion to dismiss and motion for sanctions.

A.

Dismissal is appropriate in this case on two separate grounds: the probate exception to subject matter jurisdiction; and the doctrine of res judicata. The probate exception applies because Plaintiff's *in rem* action would require this Court to essentially probate the 1963 will and to disturb the McNairy County Chancery Court's prior decision concerning the ownership of the Farm. Alternatively, Plaintiff's Complaint should be dismissed because her claims in her present action are precluded by her prior litigation.

1.

This Court lacks subject matter jurisdiction over Plaintiff's claims because they are barred by the probate exception. Under the probate exception, federal courts are prohibited from "exercising jurisdiction over certain conflicts involving property subject to a state court probate proceeding." *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017). The Supreme Court, however, has noted that this exception is "of distinctly limited scope." *Id.* (quoting *Marshall v. Marshall*, 547 U.S. 293, 310 (2006)). The probate exception applies only in three circumstances: "(1) if the plaintiff seeks to probate a will; (2) if the plaintiff seeks to annul a will; and (3) if the plaintiff seeks to reach the *res* over which the state court had custody." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (cleaned up).

The distinction between actions *in personam* and *in rem* is important for purposes of determining federal jurisdiction in a probate exception challenge. *Voss*, 621 F. Supp. 3d at 823. *In personam* actions involve claims "brought against a person rather than property," while *in rem* actions include "determining title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property ... in other words, *in rem* actions are fights over a property or a person in the court's control." *Chevalier*, 803

F.3d at 801-02 (cleaned up). *In personam* actions fall outside of the probate exception and may be heard in federal court "so long as the claims do not interfere with the *res* in the state court probate proceedings or ask a federal court to probate or annul a will." *Osborn*, 865 F.3d at 434 (cleaned up). *In rem* actions are barred. *Chevalier*, 803 F.3d at 804; *see also Cheairs v. Thomas*, No. 2:20-CV-2494-SHL-tmp, 2022 WL 19076620, at *4 (W.D. Tenn. Dec. 2, 2022).

Here, the probate exception applies. To grant Plaintiff the relief she requests in this proceeding, this Court would have to probate the 1963 will. Plaintiff disagrees with the prior state court action that ruled that the 1967 deed that created the tenancy by the entirety was determinative of the ownership interests of the Farm. Plaintiff asks this Court to consider the unprobated 1963 will and, based upon that will, reach a different conclusion as to who are the rightful heir(s) to the Farm. To do so would require this Court to probate the 1963 will and to "disturb or affect the possession of property in the custody of a state court" because the state court already probated Ms. Baker's estate. *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007); *see also Leslie v. Mack*, No. 3:22-CV-00504, 2023 WL 4612694, at *3–4 (M.D. Tenn. June 26, 2023), *report and recommendation adopted*, No. 3:22-CV-00504, 2023 WL 4611817 (M.D. Tenn. July 18, 2023) (finding that Plaintiff's lawsuit seeking an award of estate assets that were allegedly distributed fraudulently and for an order divesting heirs of property received through estate "f[ell] squarely within 'the sorts of remedies implicated by the probate exception' as the Sixth Circuit has defined them.")

Moreover, Plaintiff has explicitly intended to bring an *in rem* action which, as explained in *Chevalier*, is barred by the probate exception. *See* 803 F.3d at 804. Plaintiff styled her Complaint as a "Verified Complaint *In Rem*". (D.E. 1, p. 1.) She "seeks an Order from this Court in which it adjudicates her rights and/or the right of others in related to [the Farm]." (*Id*. at p. 2.) In her

7

response in opposition to the Berrymans' motion to the intervene Plaintiff "pray[ed] for this Honorable Court to deny the Berrymans' Motion to Intervene and determine the lawful ownership rights to [the Farm], and to take appropriate action to restore the ownership rights to the lawful owner(s)." (D.E. 15, p. 11.) Without question, Plaintiff's lawsuit seeks a "determin[ation of] title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property ...". *Chevalier*, 803 F.3d at 801-02. Such a lawsuit is one in which a federal court has no jurisdiction under the probate exception and should be DISMISSED WITHOUT PREJUDICE.

2.

Even if the probate exception did not deprive this Court of subject matter jurisdiction, dismissal would nonetheless be warranted under the doctrine of res judicata. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States,* 440 U.S. 147, 153 (1979) (cleaned up). In general, the federal courts have also given preclusive effect to issues decided by state courts. *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, res judicata and collateral estoppel both reduce unnecessary litigation and foster reliance on adjudication, as well as promote comity between state and federal courts. *Id.* Therefore, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96; *see also* 28 U.S.C. § 1738.

The Tennessee Court of Appeals has explained the distinction between collateral estoppel and res judicata:

> Collateral estoppel and res judicata are related doctrines; however, they operate in separate ways to prevent inconsistent judicial decisions. Res judicata is said to act "like a bludgeon, indiscriminately smashing all efforts of a party to relitigate events that have already been litigated and decided in a prior suit." Joseph W. Glannon, *Civil Procedure: Examples and Explanations* 485 (4th ed.2001). Collateral estoppel, on the other hand, "operates like a scalpel, dissecting a lawsuit into its various issues and surgically removing from reconsideration any that have been properly decided in a prior action."

*Id.*

Res judicata or "claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp.*, 590 U.S. 405, 412 (2020). Parties may not "relitigat[e] the same 'claim' or 'cause of action,' even if certain issues were not litigated in the prior action." *Turner v. DeJoy,* No. 221CV02223-SHL-atc, 2022 WL 1817752, at *4 (W.D. Tenn. Mar. 15, 2022), *report and recommendation adopted*, No. 221CV02223-SHL-atc, 2022 WL 1813910 (W.D. Tenn. June 2, 2022) (cleaned up). "Suits involve the same claim or cause of action if the later suit arises from the same transaction or involves a common nucleus of operative facts." *Id.*

If a claim is barred by the doctrine of res judicata, "[t]he weight of authority supports dismissal for failure to state a claim." *Owens v. Shelby Cnty. Sch. Bd. of Educ.*, No. 2:18-cv-02345-JTF-dkv, 2018 WL 4374238, at *8 (W.D. Tenn. Jul. 18, 2018), *report and recommendation adopted*, 2018 WL 4179076 (W.D. Tenn. Aug. 31, 2018). Courts are "empowered to raise res judicata sua sponte ... in the interests of, *inter alia*, the promotion of judicial economy." *Holloway Const. Co. v. U.S. Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) (citations omitted).

In the Sixth Circuit, res judicata/claim preclusion is applicable if four elements are satisfied:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the

> subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019) (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)). In determining whether there is an identity of causes of action, courts in the Sixth Circuit evaluate whether "the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Id.* at 383. This element is also satisfied if there is an affinity between "the facts creating the right of action and ... the evidence necessary to sustain each action," with "the evidentiary component looking to whether the same underlying factual evidence could support and establish both claims." *Id.* at 383–84 (internal citations and quotations omitted). "[T]he critical consideration is operative 'factual overlap' between the claims." *Id.* at 384.

All four of the above elements are satisfied in this case. First, the McNairy County Chancery Court's decision regarding the rightful owners of the Farm is a final decision on the merits by a court of competent jurisdiction. "A judgment is final in Tennessee when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Creech v. Addington,* 281 S.W.3d 363, 377 (Tenn.2009) (internal quotation marks, emphasis & citation omitted). The Tennessee Court of Appeals affirmed the Chancery Court's decision on April 6, 2021. Thus, the first element is satisfied.

Next, Plaintiff's current lawsuit is a subsequent action between the same parties or their privies. In the original state court action Plaintiff sued the Baker Estate and its heirs, which included Intervenors. Now, Plaintiff is pursuing this *in rem* action against the Farm of which the Chancery Court determined that the Intervenors were rightful owners. Plaintiff did not name Intervenors as parties to this subsequent action but clearly the Intervenors' interests could be affected by this action.

Third, the issue set forth in this action was or should have been litigated in the state action. The Chancery Court interpreted the 1967 deed to find that the Intervenors were heirs to the Farm. Any issues Plaintiff raises now concerning the 1963 will that was not probated or allegations of fraud against the Intervenors were or should have been litigated in the Chancery Court action.

Finally, Plaintiff's current lawsuit and her prior state court action share an identity of the causes of action. In both actions she asks courts to declare her as an heir to the same piece of property, both actions share a common nucleus of operative facts, and share the same underlying factual evidence.

All the issues concerning Plaintiff's claim to be an heir to the Farm should have been raised and decided in the prior action. Plaintiff's repeated efforts to relitigate the question of heirship is precisely what the doctrine of res judicata seeks to prevent. Accordingly, it is alternatively recommended that the Court find that claim preclusion applies and Plaintiff's action be DISMISSED WITH PREJUDICE.

B.

It is also recommended that the Court impose Rule 11 sanctions against Plaintiff. Federal Civil Rule 11(b)(1)–(3) provides that "[b]y presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the filing (1) is not presented for an improper purpose, (2) the legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) the factual contentions presently have evidentiary support or will have such support upon further investigation. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an

11

appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.*(c)(1). The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and if a sanctions award is prompted by a party motion, may include "the prevailing party['s] ... reasonable expenses, including attorney's fees, incurred for the motion." *Id.*(c)(2). Rule 11 also authorizes the imposition of nonmonetary sanctions. *Id.; Tropf v. Fid. Nat. Title Ins. Co.,* 289 F.3d 929, 940 (6th Cir. 2002).

"In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was reasonable under the circumstances." *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir.2006) (quotation marks omitted). This test is an objective standard. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989). "The plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir.2010) (quotation marks and alterations omitted).

The Rule 11 standard "takes into account the special circumstances that often arise in pro se situations[. But] pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988) (quotation marks omitted).

This is the third action Plaintiff has initiated seeking to have herself either declared as having ownership interests in the Farm or otherwise challenging the Intervenors' rights to the property. The McNairy Chancery Court has ruled against Plaintiff in her challenge to the ownership of the Farm and that decision was affirmed by the Tennessee Court of Appeals. This

Court has previously dismissed another of Plaintiff's attempts to have ownership interests in the Farm awarded to her. Plaintiff's latest attempt to wrest ownership of the Farm from the Intervenors is repetitive, at best, and harassing and vexatious at worst. Rule 11 sanctions are therefore warranted.

When she initiated this action, Plaintiff moved for *in forma pauperis* status. (D.E. 3.) While the Court denied her application to proceed without prepaying fees or costs (D.E. 7), the financial information she provided to the Court in her application indicates that she likely could not satisfy any monetary sanctions that could be imposed against her.

While the imposition of monetary sanctions against Plaintiff is not recommended, the Court should nonetheless impose sanctions to deter her from filing another future action in this Court concerning the Farm. District courts may properly enjoin vexatious litigants from filing further actions against a defendant without first obtaining leave of court. *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264, 269 (6th Cir.1998). "There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Id.* at 269. A district court need only impose "a conventional prefiling review requirement." *Id.* "The traditional tests applicable to preliminary injunction motions need not be applied since the district court's prefiling review affects the district court's inherent power and does not deny a litigant access to courts of law." *Sims-Eiland v. Detroit Bd. of Educ.,* 173 F. Supp. 2d 682, 689–90 (E.D. Mich. 2001). A prefiling review requirement is a judicially imposed remedy whereby a plaintiff must obtain leave of the district court to assure that the claims are not frivolous or harassing. See e.g., *Ortman v. Thomas,* 99 F.3d 807, 811 (6th Cir.1996).

Accordingly, it is recommended that Plaintiff be enjoined from filing any subsequent causes of action in this Court against the Intervenors, an action involving the ownership of the

13

Farm, or an action seeking the same or similar relief as the present case without first obtaining leave of the Court.

### III.

For the reasons above, it is RECOMMENDED that Plaintiff's *In Rem* Complaint be DISMISSED. If the Court adopts the recommendation that the probate exception applies, then this Court does not have subject matter jurisdiction over Plaintiff's Complaint and the dismissal should be without prejudice. If the Court dismissed Plaintiff's Complaint on the alternative ground of res judicata, the dismissal should be with prejudice. The Court should also impose a sanction against Plaintiff and enjoin her from filing any subsequent causes of action in this Court against the Intervenors, an action involving the ownership of the Farm, or an action seeking the same or similar relief as the present case without first obtaining leave of the Court.

Respectfully submitted this the 19th day of July, 2024.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**